1

**SEYFARTH SHAW LLP**
Jon D. Meer (SBN 144389)
jmeer@seyfarth.com
Leo Q. Li (SBN 293539)
lli@seyfarth.com
Sofya Perelshteyn (SBN 320931)
sperelshteyn@seyfarth.com
Justin J. Jackson (SBN 333687)
jujackson@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Defendant
ULTA SALON, COSMETICS & FRAGRANCE,
INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL GONZALEZ, an individual; MINDY MIRANDA, an individual; SARYNA DE JESUS, an individual; TATIANA BERNAL, an individual; FLOR CRUZ, an individual; JULISSA PEREZ, an individual; ELISSA PADILLA, an individual; IAN LAMAR, an individual; CLAUDIA BENITEZ, an individual; BRITTNEY HUGHES, an individual; GEORGE MADDOX, an individual; VICTORIA HENKES, an individual; ALEXANDRA TAN, an individual; DANIELLE QUAID, an individual; ELIZABETH FAABORG, an individual; VINCENT HALL, an individual; JERRICA LABIAN, an individual; LAUREN HALL, an individual; RYAN GUFFEY, an individual; KIERSTEN WONG, an individual; BRITTANI HERENA, an individual; JANET SANCHEZ, an individual; BRITTANY SOMMERS, an individual; CHEYENNE LOPEZ, an individual; TALIA CASTANEDA, an individual; NOHELY LLAMAS, an individual; RHONDA PRICKETT, an individual; DEBBIE HARRISON, an individual; each as an individual and on behalf of all others similarly situated | **CLASS AND REPRESENTATIVE ACTION**<br><br>Case No.  2:22-cv-363<br><br>**DEFENDANT ULTA'S NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT**<br><br>[Los Angeles County Superior Court Case No. 21STCV42843]<br><br>Complaint Filed:  November 19, 2021<br>Trial Date:        None Set |

78296193v.4

Plaintiffs,

     v.

ULTA SALON, COSMETICS & FRAGRANCE, INC., dba ULTA BEAUTY a Delaware corporation, and DOES 1-50, inclusive,

Defendants.

DEFENDANT ULTA SALON, COSMETICS & FRAGRANCE, INC'S NOTICE OF REMOVAL

78296193v.4

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Defendant") files this Notice of Removal, asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California for the County of Los Angeles, to the United States District Court for the Central District of California.  This Court has original jurisdiction over the action pursuant to CAFA for the following reasons:

## I. BACKGROUND

1. On November 19, 2021 Plaintiff Angel Gonzalez, *et al*. ("Plaintiffs") filed a class action and representative action complaint in the Superior Court of California for the County of Los Angeles, titled "*ANGEL GONZALEZ, an individual; MINDY MIRANDA, an individual; SARYNA DE JESUS, an individual; TATIANA BERNAL, an individual; FLOR CRUZ, an individual; JULISSA PEREZ, an individual; ELISSA PADILLA, an individual; IAN LAMAR, an individual; CLAUDIA BENITEZ, an individual; BRITTNEY HUGHES, an individual; GEORGE MADDOX, an individual; VICTORIA HENKES, an individual; ALLEXANDRA TAN, an individual; DANIELLE QUAID, an individual; ELIZABETH FAABORG, an individual; VINCENT HALL, an individual; JERRICA LABIAN, an individual; LAUREN HALL, an individual; RYAN GUFFEY, an individual; KIERSTEN WONG, an individual; BRITTANI HERENA, an individual; JANET SANCHEZ, an individual; BRITTANY SOMMERS, an individual; CHEYENNE LOPEZ, an individual; TALIA CASTANEDA, an individual; NOHELY LLAMAS, an individual; RHONDA PRICKETT, an individual; DEBBIE HARRISON, an individual; each as an individual and on behalf of all others similarly situated v. ULTA SALON, COSMETICS & FRAGRANCE, INC., dba ULTA BEAUTY a Delaware*

1

*corporation, and DOES 1-50, inclusive,*" Case No. 21STCV42843 ("Complaint").  The Complaint asserts ten causes of action for (1) Failure to Provide Meal Periods in Violation of California Labor Code §§ 226.7, 512, and 1198; (2) Failure to Provide Rest Periods in Violation of California Labor Code §§ 226.7, 1198, and Wage order [sic] 9-2001; (3) Failure to Pay Overtime in Violation of California Labor Code § 510; (4) Failure to Maintain Accurate Records in Violation of California Labor Code § 1174(d); (5) Failure to Pay All Wages When Due in Violation of California Labor Code § 204; (6) Failure to Provide Accurate Itemized Wage Statements in Violation of California Labor Code §§ 226(a) and 226.3; (7) Failure to Reimburse Work Expenses in Violation of California Labor Code § 2802; (8) Failure to Timely Pay Wages Upon Termination in Violation of California Labor Code §§ 201-203; (9) Violation of the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code §§ 2698 *et seq*.; and (10) Unfair Business Practices in Violation of California Business and Professions Code § 17200.

2.    On November 29, 2021, Defendant received, by and through its undersigned counsel of record, a packet containing the Notice and Acknowledgement of Receipt; Summons; Complaint; Civil Case Cover Sheet; Notice of Case Assignment; Notice of Acknowledgement of Receipt; and the Alternative Dispute Resolution Information Package.  A true and correct copy of the packet received by Defendant is attached hereto as **Exhibit A**.

3.    On December 20, 2021, Defendant, by and through its undersigned counsel of record, served its Notice and Acknowledgement of Receipt of the Complaint.

4.    On January 14, 2022, Defendant filed its Answer to Plaintiffs' Complaint in the Superior Court of California for the County of Los Angeles.  A true and correct copy of the Answer filed to Plaintiffs' Complaint is attached hereto as **Exhibit B**.

5.    Defendant has not filed or received any other pleadings or papers, other than the pleadings described as Exhibits A and B, in this action prior to filing this Notice of Removal.

78296193v.4

## II.    TIMELINESS OF REMOVAL

6.    Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons—"The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant . . . ." 28 U.S.C. §1446(b)(1).

7.    The service of process which triggers the 30-day period to remove is governed by state law.  *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) ("When a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law."); *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

8.    When a defendant accepts service by notice and acknowledgement of receipt of the complaint, the 30-day period to remove is not triggered until a defendant executes and returns the acknowledgement of service.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (removal period is not triggered "by mere receipt of the complaint unattended by any formal service"); *Langston v. 20/20 Companies, Inc.*, 2014 WL 5335734, at *3 (C.D. Cal. Oct. 17, 2014) ("[S]ervice by mail is not complete until the recipient signs the acknowledgement of receipt and thereafter returns it to the sender … California courts have clarified that [Cal. Code Civ. Proc. § 415.30] 'expressly predicates the efficacy of such service upon the execution and return of an acknowledgment of service….'") (quoting *Thierfeldt v. Marin Hosp. Dist.*, 35 Cal. App.3d 186, 199 (1973)).

9.    Here, service of the Complaint was deemed complete on December 20, 2021, when Defendant executed and returned the acknowledgement of service of the Complaint.  Defendant's Notice of Removal is timely because it filed the Notice of

DEFENDANT ULTA SALON, COSMETICS & FRAGRANCE, INC'S NOTICE OF REMOVAL

78296193v.4

Removal on January 18, 2022, which is within 30 days of service of the Summons and Complaint on December 20, 2021.

## III.    REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

10.    Under the CAFA, district courts have original jurisdiction for class actions "if [1] the class has more than 100 members, [2] the parties are minimally diverse, and [3] the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens* ("*Dart*"), 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).  As set forth below, each of these three requirements are met and thus this action is properly removable, pursuant to 28 U.S.C. § 1441(a).

### A.    The Class Action Includes Approximately 22,202 Potential Class Members

11.    A removal under CAFA requires at least 100 members in a proposed class. *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction does not apply to any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

12.    Here, Plaintiffs defined the proposed class to include "individuals who currently work or formerly worked for Defendant in the State of California as non-exempt, hourly full time and part time employees, at any given time during the four years prior to the filing of this complaint…." (Ex. A—Complaint, ¶ 44.)  Based on the filing date of the Complaint on November 19, 2021, the proposed class period covers the time period of **November 19, 2017 to the present**.

13.    Based on the proposed class definition, **there are approximately 22,202 current and former non-exempt employees in the proposed class**.  (Declaration of Devon Byrne in Support of Defendant's Notice of Removal ("Byrne Decl."), ¶ 11.) Indeed, Plaintiffs concede that the class size exceeds 100 members—"Plaintiffs are informed and believe that the total number of current and formerly employed members of the Class exceeds 100." (Ex. A—Complaint, ¶ 78.)  Thus, there is no question that the

size of the proposed class far exceeds the minimum threshold of 100 members under CAFA.

### B. Plaintiffs And Defendant Are Minimally Diverse

14.     CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction—that is, at least one purported class member must be a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant.").

15.     A party's citizenship is determined at the time the lawsuit was filed. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action [was] brought.").

16.     In the instant case, Plaintiffs are citizens of a state (California) that is different from the states of citizenship of Defendant (Delaware and Illinois).

### 1. Plaintiffs Are Citizens Of California

17.     For diversity purposes, a natural person's state citizenship is determined by that person's domicile—*i.e.*, one's "permanent home, where [that person] resides with the intention to remain or to which [that person] intends to return." *Kantor v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed").

18.     In this case, Plaintiffs allege that they are citizens of California. (*See* Ex. A—Complaint, ¶¶ 3–30.)  For example, Plaintiff Angel Gonzalez "is and was, at all times relevant to this Complaint, an adult individual who lived in Valley Village, California, and worked for Defendant in the City of Los Angeles, in the County of Los Angeles, California." (Ex. A—Complaint, ¶ 3.)  In addition, Plaintiffs allege that "the named Defendant employed certain Plaintiffs, who are residents of [Los Angeles] county…." (*Id*. at ¶ 43.)  Again, CAFA requires only minimal diversity for the purpose of

1  establishing federal jurisdiction—that is, at least one purported class member must be a

2  citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).

3      19.    Additionally, Plaintiffs provided Defendant with their home addresses

4  during the course of their employment for purposes of their personnel files, payroll

5  checks, and tax withholdings.  (Byrne Decl., ¶ 6.)  Defendant's review of Plaintiffs'

6  personnel files reveal that Plaintiffs reside in California.  (*Id.*)

7      20.    Plaintiffs' intent to remain domiciled in California also is evident from the

8  fact that they brought this lawsuit against Defendant in the Superior Court of the State of

9  California for the County of Los Angeles.  Therefore, Plaintiffs were at all relevant times,

10  and still are, citizens and residents of the State of California.

11      **2.**    **Defendant Is Not A Citizen Of California**

12      21.    Defendant is, and was at the time of the filing of this action, a citizen of a

13  state other than California within the meaning of 28 U.S.C. § 1332(c)(1).

14      22.    For diversity purposes, a corporation is deemed a citizen of the state "by

15  which it has been incorporated" and of the state "where it has its principal place of

16  business." 28 U.S.C. § 1332(c)(1).

17      23.    Defendant is now, and ever since this action commenced has been,

18  incorporated under the laws of the State of Delaware.  (Byrne Decl., ¶ 7.)  Thus, for

19  purposes of diversity jurisdiction, Defendant is a citizen of Delaware.

20      24.    Further, as shown below, Defendant's principal place of business is, and has

21  been at all times since this action commenced, located in the State of Illinois.  (Byrne

22  Decl., ¶ 8.)  Thus, for purposes of diversity jurisdiction, Defendant is also a citizen of

23  Illinois.

24      25.    The United States Supreme Court held that when determining a

25  corporation's principal place of business for diversity purposes, the appropriate test is the

26  "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010).  Under the

27  "nerve center" test, the "principal place of business" means the corporate headquarters

28  where a corporation's high level officers direct, control and coordinate its activities on a

day-to-day basis. *Id*. at 92–93 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092–93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

26.   Under the "nerve center" test, Illinois emerges as Defendant's principal place of business.  Defendant's corporate headquarters are located in Bolingbrook, Illinois where Defendant's high-level officers direct, control, and coordinate its activities. (Byrne Decl., ¶ 8.)  Defendant's high-level corporate officers maintain offices in Bolingbrook, and many of Defendant's corporate-level functions are performed in the Bolingbrook office.  (*Id*.)  Additionally, many of Defendant's executive and administrative functions, including corporate finance and accounting, are directed from the Bolingbrook headquarters.  (*Id*.)

27.   Therefore, for purposes of diversity of citizenship, Defendant is, and has been at all times since this action commenced, a citizen of the State of Delaware and the State of Illinois.  28 U.S.C. § 1332(c)(1).

28.   Because Plaintiffs are citizens of California and Defendant is a citizen of Delaware and Illinois, minimal diversity exists for purposes of CAFA.

### 3.   The Citizenship Of Doe Defendants Should Be Disregarded

29.   The other defendants named in the Complaint are merely fictitious parties identified as "Does 1 through 50" whose citizenship shall be disregarded for purposes of this removal.  28 U.S.C. § 1441(b) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"); *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) ("[T]he unknown defendants sued as 'Does' need not be

78296193v.4

joined in a removal petition.") (citing *Ronson Art Metal Works, Inc. v. Hilton Lite Corp.*, 111 F.Supp. 691, 694 (N.D. Cal. 1953)).

30.    Thus, the existence of "Does 1 through 50" in the Complaint does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679–80 n.4 (9th Cir. 2006) (rule applied in CAFA removal; "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

### C.    The Amount In Controversy Is More Than $68 Million, Which Exceeds The $5 Million Statutory Threshold Under CAFA

31.    CAFA requires that the amount in controversy exceed $5 million, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).

32.    In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.

33.    The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id*. at 42–43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

8

78296193v.4

34.     Here, even if the Complaint does not allege an amount in controversy, the removing defendant only needs to prove by a **preponderance of the evidence** that the amount in controversy exceeds that minimum. *Ramos v. MOOG Inc.*, 2020 WL 969023, at *3 (C.D. Cal. Feb. 27, 2020) (applying preponderance of evidence standard to deny motion to remand where plaintiff's class action complaint makes conclusory allegation that the "aggregate claim is under five million dollars"); *see also Dart*, 135 S. Ct. at 553–54 ("Removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the jurisdictional threshold") (emphasis added, internal alterations omitted); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."); *accord Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged. In light of *Standard Fire*, this rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million.") (citations omitted); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (holding that under the "preponderance of the evidence" standard, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

35.     To satisfy this standard, the "defendants' notice of removal need include **only a plausible allegation** that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554 (emphasis added); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in

9

CAFA removal cases.  First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount'") (emphasis added).

36.    The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

37.    For purposes of ascertaining the amount in controversy, "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

38.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

39.    If a plaintiff asserts statutory violations, **the court must assume that the violation rate is 100%** unless the plaintiff specifically alleges otherwise:

DEFENDANT ULTA SALON, COSMETICS & FRAGRANCE, INC'S NOTICE OF REMOVAL

78296193v.4

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform . . . policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

11

78296193v.4

40.  Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio*, *LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

12

78296193v.4

41.    Plaintiffs seek to recover, on behalf of themselves and the alleged class, unpaid wages and penalties for Defendant's alleged failure to pay overtime wages, failure to provide meal and rest breaks, failure to provide meal and rest break premium pay, failure to provide accurate and complete itemized wage statements, failure to pay all wages timely, unreimbursed business expenses, failure to pay all wages upon termination, and unfair business practices.  (Ex. A—Complaint ¶¶ 2, 44–156, 189–206.)  Plaintiffs also seek civil penalties under PAGA (Ex. A—Complaint, ¶¶ 157–188), and attorneys' fees and costs.  (Ex. A—Complaint, Prayer for Relief.)

42.    As set forth below, the alleged amount in controversy, implicated by the classwide allegations, exceeds **$68 million**, even under very conservative violation rates. All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and solely for purposes of this Notice of Removal, that liability is established.

### 1.    The First Cause Of Action For Unpaid Meal Period Premiums: The Amount In Controversy Exceeds $8,676,718.96 Based On Only One Hour Of Premium Pay Per Employee Per Pay Period

43.    For Plaintiffs' first cause of action, Plaintiffs allege that "as a matter of course during all or a substantial portion of the Class Period, Plaintiffs and each member of the Class were regularly uniformly and systematically prohibited by Defendant from taking timely compliant, uninterrupted, unpaid 30-minute meal periods." (Ex. A—Complaint, ¶ 54.)  According to the Complaint, the employees' work "was rigorous and nonstop," such that they "are/were frequently prevented from timely taking meal breaks and rest breaks due to constant work demands and staffing shortages, [and] they were not timely relieved of all duties to take such breaks."  (*Id*.)  Plaintiffs further allege that employees were "required … to watch training videos on [the] 'WorkJam' app during their meal and rest breaks" and were not "paid a one hour premium wage at their regular rate of pay for each missed, short, late, or interrupted meal period."  (*Id*.)

DEFENDANT ULTA SALON, COSMETICS & FRAGRANCE, INC'S NOTICE OF REMOVAL

78296193v.4

44.    As a result of Plaintiffs' allegations, they "seek recovery of 'premium pay' pursuant to the DLSE's Policy Manual Guidelines and *Labor Code* § 226.7." (Ex. A—Complaint, ¶ 94) (emphasis in original).

45.    California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Cal. Lab. Code § 512.  Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ." California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

46.    The statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code § 17200, *et seq*.  *See Falk*, 237 Cal. App. 4th at 1462, n.12 (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). Accordingly, the proposed class period for the first cause of action is from **November 19, 2017 until the present**.

47.    Defendant pays its non-exempt employees every two weeks. (Byrne Decl., ¶ 10.)  Accordingly, there are 26 pay periods per year.  During the proposed class period, the potential class members worked a total of approximately 1,076,516 workweeks, or approximately 538,258 pay periods (1,076,516 / 2).  (*Id.* at ¶ 11.)

14

48.     Based on the allegations of the Complaint, assuming each potential class member is entitled to one hour of premium pay per pay period for the alleged non-provision of meal periods, the amount in controversy on this claim would equal no less than **$8,676,718.96** ($16.12/hour x 538,258 pay periods).

49.     Defendant's estimate is very conservative.  Defendant assumes only one meal period violation for each two-week pay period, even though Plaintiffs have alleged they were "regularly uniformly and systematically prohibited from taking timely compliant, uninterrupted, unpaid 30-minute meal periods," and that these violations occurred "frequently."  (Ex. A—Complaint, ¶ 54.).  In other words, if an employee worked 10 days during a two-week pay period, Defendant has calculated only a single meal period violation during that pay period.

### 2.     The Second Cause Of Action For Unpaid Rest Period Premiums: The Amount In Controversy Exceeds $8,676,718.96 Based On Only One Hour Of Premium Pay Per Employee Per Pay Period

50.     For Plaintiffs' second cause of action, they allege that "[t]hroughout the Class Period, Defendant fails/failed to provide rest periods to Plaintiffs and certain of the Class Members."  (Ex. A—Complaint, ¶ 100.)  According to the Complaint, the employees' work "was rigorous and nonstop," such that they "are/were frequently prevented from timely taking rest breaks due to constant work demands and staffing shortages." (*Id*.)  Plaintiffs further allege that employees were "required … to watch training videos on [the] 'WorkJam' app via their personal cell phone on multiple occasions during their rest breaks." (*Id*.)  Plaintiffs further allege that employees "were not timely relieved of all duties and were impeded or prevented from timely taking timely [sic] all rest breaks after every fourth hour of work (or major fraction thereof)." (*Id*. at ¶ 101.)

51.     In addition, Plaintiffs allege that they "and the Class Members were not paid premium pay penalties pursuant to *Labor Code* § 226.7(c) for any of the workdays that Defendant failed to provide them timely, uninterrupted rest breaks."  (Ex. A—Complaint, ¶ 102) (emphasis in original).

15

78296193v.4

52.    As a result, Plaintiffs seek "'premium pay penalties' pursuant to *Labor Code* § 226.7." (Ex. A—Complaint, ¶ 103) (emphasis in original).

53.    Under California law, "[e]very employer shall authorize and permit all employees to take rest periods, which . . . shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012).  California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely rest periods.  An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon*, 2010 WL 1753194 at *4.

54.    The statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years.  *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code § 17200, *et seq*. *See Falk*, 237 Cal. App. 4th at 1462, n.12.  Accordingly, the proposed class period for the second cause of action is from **November 19, 2017 until the present**.

55.    Based on the allegations of the Complaint, assuming each potential class member is entitled to one hour of premium pay per pay period for the alleged non-provision of rest periods, the amount in controversy on this claim would equal no less than **$8,676,718.96** ($16.12/hour x 538,258 pay periods).

56.    Defendant's estimate is very conservative.  Defendant assumes only one rest period violation during each two-week pay period, even though Plaintiffs have alleged they were "regularly uniformly and systematically prohibited from taking timely compliant, uninterrupted, unpaid 30-minute meal periods," and that these violations occurred "frequently." (Ex. A—Complaint, ¶ 100.)  In other words, if an employee

16

78296193v.4

worked 10 days during a two-week pay period, Defendant has calculated only a single rest period violation during that pay period.

### 3. The Third Cause Of Action For Unpaid Overtime Wages: The Amount In Controversy Exceeds $4,338,359.48 Based On Only 10 Minutes Of Unpaid Overtime Per Employee Per Week

57. Plaintiffs' Third Cause of Action seeks recovery for "unpaid overtime compensation." (Ex. A—Complaint, ¶¶ 2, 112–113.) In the Prayer For Relief, Plaintiffs further seek "an award of unpaid overtime wages . . . ." (Ex. A—Complaint, Prayer For Relief, ¶ 6.) Plaintiffs also seek "an award of unpaid wages for all labor performed . . . ." (*Id*. at ¶ 5.)

58. Plaintiffs allege that "Plaintiffs and certain member[s] of the Class were regularly, uniformly and systematically required by Defendant to work in excess of eight hours per day, and/or required to work in excess of 40 hours per week without being paid the requisite overtime wages." (Ex. A—Complaint, ¶ 50.) Plaintiffs further allege that employees "were not paid at the correct overtime rate of pay." (*Id*. at ¶ 112.)

59. Plaintiffs also allege that "Defendant did not pay Plaintiffs and members of the Class overtime pay for all of the overtime hours worked, includ[ing] hours worked while off the clock." (Ex. A—Complaint, ¶ 115.) Specifically, Plaintiffs alleged that employees "work[ed] off the clock during lunch breaks, [and] in many instances because of the unrecorded hours worked, their shifts exceeded eight hours a day or over 40 hours in a week." (*Id*. at ¶ 51.) In addition, Plaintiffs allege Defendant "pressure[d] [employees] to clock out while they are/were still required to complete tasks assigned by Defendant." (*Id*. at ¶ 113.)

60. Plaintiffs also allege that "Defendant routinely altered Plaintiffs and the Class Members/Subclass Members timesheets to avoid paying any overtime owed." (Ex. A—Complaint, ¶ 51.) Plaintiffs further allege that employees had "to undergo daily 'bag checks' prior to leaving Defendants [sic] store location" and "were required to clock out before waiting to have their personal bag/belongings checked by a manager." (*Id*.)

17

61.    Based on Plaintiffs' allegations, potential class members were "frequently" required to work off the clock during their unpaid meal periods and were subject to "daily" off-the-clock bag checks.  Even assuming each potential class member worked off the clock for two minutes each day, that means each employee would incur 10 minutes of off-the-clock work for each five-day workweek.

62.    The statute of limitations for recovery for unpaid wages under California Labor Code §§ 510 and 1194 pay is three years.  Cal. Civ. Proc. Code § 338.  The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations.  *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation").  Accordingly, the proposed class period for the third cause of action is from **November 19, 2017 until the present**.

63.    As stated above, during the relevant time period identified in the Complaint, Defendant employed approximately 22,202 non-exempt hourly employees in California, who worked a total of approximately 1,076,516 workweeks.  (Byrne Decl., ¶ 11.)  The 28 named plaintiffs' average hourly rate is $16.12 per hour, and is the hourly rate used for all calculations in this Notice of Removal.  (*Id.* at ¶ 10.)

64.    Accordingly, a reasonable estimate of the amount in controversy for Plaintiffs' unpaid overtime claim, at 10 minutes of unpaid overtime each week, is **$4,338,359.48** [($16.12/hour x 1.5 (overtime premium) / 6 (10 minutes per week) x 1,076,516 workweeks)].  If **none** of the alleged off-the-clock work qualified as overtime, the amount of unpaid minimum wages is **$2,892,239** [($16.12/hour / 6 (10 minutes per week) x 1,076,516 workweeks)].

65.    Although Defendant denies Plaintiffs' allegations, these are very conservative estimations for purposes of calculating the amount in controversy under CAFA removal.  Indeed, the Ninth Circuit and numerous district courts have held, an estimate of at least 30 minutes per class member per week (*i.e.*, three times Defendant's

18

assumption) is appropriate in light of Plaintiffs' allegations.  *See, e.g.*, *Arias*, 936 F.3d at 927 (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one hour of unpaid overtime per week. This assumption is reasonable in light of the Complaint, whose allegations lack specificity"); *Wheatley*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank*, N.A., 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

### 4.   The Sixth Cause Of Action For Non-Compliant Wage Statements: The Amount In Controversy Exceeds $12,928,900.00

66.    For Plaintiffs' sixth cause of action, Plaintiffs allege that "because of Defendant's intentional and knowing failure to maintain proper and accurate records, overtime hours and wages earned were also not recorded, and did not appear on the Plaintiffs' and Class Members' wage statements." (Ex. A—Complaint, ¶ 138.)  Plaintiffs further allege that "[a]s a common policy and practice Defendant did not include all hours worked, including hours worked during on-duty rest and meal breaks, overtime hours

worked and wage statements failed to include premium pay penalties for Plaintiffs and Class Members' regularly missed or otherwise, non-compliant, rest and meal breaks." (*Id.* at ¶ 139.)

67.    As a result, Plaintiffs seek "an award of penalties pursuant to *Labor Code* § 226(e)(1), and injunctive relief, attorneys' fees, and costs pursuant to Labor Code § 226(h)." (Ex. A—Complaint, ¶ 140) (emphasis in original).

68.    Based on this alleged violation, Plaintiffs claim that employees are "entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." (Ex. A—Complaint, ¶ 132.)

69.    Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Because Plaintiffs filed their Complaint on November 19, 2021, the statutory period for the claim under California Labor Code § 226 runs from **November 19, 2020 to the present**.

70.    During the limitations period of November 19, 2020 to December 23, 2021 there are approximately 9,896 potential class members with 268,473 total weeks worked. (Byrne Decl., ¶ 13.)  Based on the number of weeks worked, Defendant issued approximately 134,237 wage statements to these employees (268,473 / 2).  When including a $50 penalty for the initial wage statement and $100 for each subsequent wage statement, the amount in controversy on this claim would equal no less than **$12,928,900** ([$100 x 134,237 pay periods] - [$50 x 9,896 employees]).

**5.     The Seventh Cause Of Action For Unreimbursed Business Expenses: The Amount In Controversy Exceeds $745,281.00**

71.     For Plaintiffs' seventh cause of action, Plaintiffs allege that they "incur[red] expenses using their personal cell phones and personal vehicles to perform their job duties, [and] Defendant did not reimburse[] them." (Ex. A—Complaint, ¶ 72.) Specifically, Plaintiffs allege employees had "to use their personal cell phones to perform their job duties each workday throughout their employment." (*Id.* at ¶ 143.)  Plaintiffs further allege that "Defendant required them to contact supervisors, to communicate with other employees on shift, to text supervisors, to contact customers, to scan products, to look for inventories, to download the app 'WorkJam,' [and] to watch training videos on [the] 'WorkJam' app." (*Id.*)

72.     Plaintiffs seek to recover from Defendant "reimbursement for all business-related expenses they have incurred working for Defendant."  (Ex. A—Complaint, ¶ 147.)

73.     Under California law, an employer has a statutory obligation to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Labor Code § 2802(a).

74.     The statute of limitations for recovery for unpaid business expenses under California Labor Code § 2802 pay is three years. Cal. Civ. Proc. Code § 338.  The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations.  *Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the seventh cause of action is from **November 19, 2017 until the present**.

75.     During the limitations period of November 19, 2017 to the present, there are approximately 22,202 potential class members, who worked a total of approximately 1,076,516 workweeks. (Byrne Decl., ¶ 11.) That amount of weeks worked equates to

21

approximately 248,427 total months worked (1,076,516 weeks worked x (12 months per year/52 weeks per year)).

76.    Assuming that each potential class member during the limitations period may recover cell phone expenses in the amount of $3 per month, the amount in controversy for the unpaid business expenses would equal no less than **$745,281** ($3/month x 248,427 months).

77.    Defendant's estimate is very conservative.  For purposes of showing the amount in controversy for alleged failure to reimburse cell phone expenses, there is a wide variety of cell phone plans available, with different promotions, from different providers.  According to the U.S. Bureau of Labor Statistics, the average annual cell phone services charge is $1,188, or approximately $99 per month.  U.S. Bureau of Labor Statistics, Table 1300, p. 4, *available at* https://www.bls.gov/cex/2018/combined/age.pdf. Assuming that employees use their cell phones for business purposes for only 3% of the time during each month, their expenses would be approximately $3 per month.

### 6.    The Eighth Cause Of Action For Waiting Time Penalties: The Amount In Controversy Exceeds $19,344,000.00

78.    For Plaintiffs' eighth cause of action, Plaintiffs allege Defendant "fail[ed] to timely pay all wages due upon such Plaintiffs' and certain Class Members who separated from Defendant's employment during the Class Period, discharge[d] or quit[], Defendant failed to pay such individuals 'waiting time' penalties." (Ex. A—Complaint, ¶ 68.) Specifically, Plaintiffs allege Defendant "manipulate[ed] [] Plaintiffs and Class Members time records" and had a "requirement and practice of having Plaintiffs and certain Class Members [] handle customers and watch[] training videos during their meal breaks [so] Defendant violated Labor Code § [sic] 201 and 202 by failing to timely pay all wages due for each and every hour worked, including overtime wages." (*Id.* at ¶ 151.)

79.    Plaintiffs seek to recover "an award of 'waiting time penalties' pursuant to Labor Code § 203, and attorney's fees and costs."  (Ex. A—Complaint, ¶ 156.)

78296193v.4

80.    Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

81.    The statute of limitations period for California Labor Code § 203 penalties extends back three years from the date of filing of the complaint, or November 19, 2018. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

82.    Here, during the three-year limitations period, approximately 13,125 potential class members were terminated between November 19, 2018 and the present. (Byrne Decl., ¶ 12.)  Assuming each potential class member is owed eight hours of pay per day for the maximum penalty of 30 days, the alleged amount in controversy for the claim of waiting time penalties would be approximately **$50,778,000** [($16.12/hour x 8 hours x 30 days) x 13,125 potential class members].

83.    However, Defendant conservatively limits the amount in controversy to only **5,000 of the 13,125 potential class members** who were terminated during the three-year limitations period.  Assuming 5,000 of the 13,125 potential class members are owed eight hours of pay per day for the maximum penalty of 30 days, the alleged amount in controversy for the claim of waiting time penalties would be approximately **$19,344,000** [($16.12/hour x 8 hours x 30 days) x 5,000 potential class members].  This conservative assumption of eight hours a day is reasonable given Plaintiffs' allegations that employees "regularly and consistently [were] required to work overtime during the Class Period but were not paid for all overtime hours worked" and "were regularly, uniformly and

78296193v.4

systematically prohibited by Defendant from taking timely, compliant, uninterrupted, unpaid 30-minute meal periods" and were not "paid a one hour premium wage at their regular rate of pay for each missed, short, late or interrupted meal period." (Ex. A—Complaint, ¶¶ 54, 112.)  Indeed, courts hold that the maximum 30-day penalty is reasonable when assessing the amount in controversy for purposes of removal.  *See, e.g.*, *Tajonar v. Echosphere, LLC*, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding defendant's "calculations [we]re reasonable and consistent with [plaintiff's] own allegations" that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations.").

### 7.    Attorneys' Fees: The Amount In Controversy Exceeds $13,677,494.60

84.    Plaintiffs also seek attorneys' fees.  (Ex. A—Complaint, Prayer for Relief, ¶ 16, as to the first through eighth causes of action; and ¶ 2 as to the ninth cause of action.)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is "mandatory or discretionary"); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010–11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

85.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010–11);

DEFENDANT ULTA SALON, COSMETICS & FRAGRANCE, INC'S NOTICE OF REMOVAL

78296193v.4

*Muniz*, 2007 WL 1302504 at \*2 (attorneys' fees "are also properly considered in ascertaining the amount in controversy" for purposes of removal under CAFA).

86.     The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

87.     Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

88.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g.*, *Wheatley*, 2019 WL 688209, at \*6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at \*3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th

25

Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78–84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16–18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

89.    Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiffs' claims, attorneys' fees alone would be upward of **$13,677,494.60** in this case, which is 25% of the potential recovery of the claims alleged in the Complaint—$8,676,718.96 (meal break claim) + $8,676,718.96 (rest break claim) + $4,338,359.48 (overtime claim) + $12,928,900.00 (wage statement claim) + $745,281.00 (expense reimbursement claim) + $19,344,000.00 (waiting time penalties claim).

### 8.    The Total Aggregate Amount In Controversy Exceeds $68 Million.

90.    Although Defendant denies Plaintiffs' allegations that they or the potential class are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the potential class for all asserted claims is approximately **$68,387,473.00**:

*[Chart on following page]*

26

| Cause of Action | Amount in Controversy Based on the Allegations of the Complaint |
|---|---|
| Meal Break Claim | $8,676,718.96 (one hour of premium pay per employee per pay period) |
| Rest Break Claim | $8,676,718.96 (one hour of premium pay per employee per pay period) |
| Overtime Claim | $4,338,359.48 (10 minutes of unpaid overtime wages per employee per week) |
| Wage Statement Claim | $12,928,900.00 (based on 134,237 wage statements) |
| Expense Reimbursement Claim | $745,281.00 ($3 per month per employee for 248,427 months) |
| Waiting Time Penalties Claim | $19,344,000.00 (based on 5,000 of the 13,125 employees who were terminated at $16.12 per hour, eight hours per day, for 30 days) |
| Attorneys' Fees | $13,677,494.60 (based on 25% of the potential recovery of $54,709,978.40) |
| **Total** | **$68,387,473.00** |

91.    Although Defendant denies Plaintiffs' allegations that they or the potential class are entitled to any relief, based on Plaintiffs' allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

92.    Because minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

93.    To the extent that Plaintiffs have alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C.

DEFENDANT ULTA SALON, COSMETICS & FRAGRANCE, INC'S NOTICE OF REMOVAL

78296193v.4

§ 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

## IV.    SUPPLEMENTAL JURISDICTION

94.    Plaintiffs assert the remainder of their claims under the California Labor Code, the California Business and Professions Code, and California's PAGA statute, which arise from the "same case and controversy" as the claims forming the basis for the Court's jurisdiction under CAFA.  Plaintiffs allege that Defendant failed to maintain accurate records, failed to pay all wages when due, violated the PAGA statute, and engaged in unfair business practices.

95.    Indeed, Plaintiffs allege "Defendant failed to maintain accurate records, including records of time worked through rest and meal break periods, resulting in [sic] failure [sic] pay them overtime wages they were owed…."  (Ex. A—Complaint, ¶ 137.) Plaintiffs further allege that they and the potential class "were not paid for all of their wages, for each and every hour worked, including inter alia time worked during rest and meal breaks [and] time worked off the clock and overtime hours…."  (*Id*. at ¶ 128.) These two claims are part of the "same case and controversy" as the meal break claim, the rest break claim, and the overtime claim.

96.    Furthermore, Plaintiffs' claims under PAGA and the California Business and Professions Code also arise from the "same case and controversy" as the claims that form the basis for the Court's jurisdiction under CAFA, because these claims rise and fall with the underlying California Labor Code claims.  *See, e.g.*, *Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 958 (C.D. Cal. 2015) ("A plaintiff pursuing a representative PAGA action must prove the alleged underlying Labor Code violations (i) first, as to him or herself, and (ii) second, as to all . . . aggrieved employees for which a penalty also is sought."); *Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1182 (C.D. Cal. 2008) ("Plaintiff's claim under the Private Attorneys General Act is wholly dependent upon her other claims" and "[b]ecause all of Plaintiff's other claims fail as a matter of law, so does her PAGA claim") *aff'd*, 368 F. App'x 761 (9th Cir. 2010); *Sanders v. Old*

28

78296193v.4

*Dominion Freight Line, Inc.*, 2018 WL 6321628, at *4 (C.D. Cal. June 25, 2018) ("Plaintiffs' PAGA claim rises or falls with their other claims"); *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."); *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185, 140 Cal. Rptr. 3d 796, 801 (2012) ("When a statutory claim fails, a derivative UCL claim also fails.") (citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182 (1999)).

97.    Therefore, the remaining claims are part of the "same case and controversy" as the claims that form the basis for the Court's jurisdiction under CAFA.  Accordingly, this Court has supplemental jurisdiction over Plaintiffs' claims under California law pursuant to 28 U.S.C. § 1367(a).  *See Geanta v. Compass Health, Inc.*, 673 F. App'x 768, 769 (9th Cir. 2017) (reversing dismissal of related state law claims on grounds that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

## V.    VENUE

98.    Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c).  This action originally was brought in the Superior Court of the State of California for the County of Los Angeles, which is located within the Central District of California.  28 U.S.C. § 84(c).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## VI.    NOTICE TO STATE COURT AND TO PLAINTIFF

99.    Defendant will give prompt notice of the filing of this Notice of Removal to Plaintiffs and to the Clerk of the Superior Court of the State of California for the County of Los Angeles. A true and correct copy of this Notice of Removal will be promptly served on Plaintiffs and filed with the Clerk of the Superior Court of the State of California for the County of Los Angeles as required under 28 U.S.C. § 1446(d).

## VII.   PRAYER FOR REMOVAL

100.   WHEREFORE, Defendant prays that this civil action be removed from Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California.


DATED: January 18, 2022                SEYFARTH SHAW LLP


By:  */s/ Justin J. Jackson*
        Jon D. Meer
        Leo Q. Li
        Sofya Perelshteyn
        Justin J. Jackson
        Attorneys for Defendant
        ULTA SALON, COSMETICS & FRAGRANCE, INC.

30

78296193v.4